UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHARON TRITTEN,
                         Plaintiff,              06-CV-6647

v.                                               DECISION
                                                 and ORDER
JOANNE B.BARNHART,
Commissioner of Social Security,

                         Defendant.
_____

## INTRODUCTION

Plaintiff, Sharon Tritten ("Tritten") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI").  On March 15, 2004, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  On April 30, 2004, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that the Commissioner's decision is not supported by substantial evidence.  Accordingly, plaintiff's motion for judgment on the pleadings is granted and defendant's motion for judgment on the pleadings is denied.

## BACKGROUND

Plaintiff applied for disability and SSI benefits on October 30, 1981 which was denied at the reconsideration level in February, 1982.  Plaintiff filed a second application for SSI

benefits on July 8, 1990 claiming that she was disabled by "spastic paralysis of the right side" which began in 1954 after she experienced a stroke as a child. (Tr. 155-158, 159-171)  The claim was approved at the initial level with an onset date of June 8, 1990.

The 1981 application was reopened in accordance with Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995) and Stieberger v. Sullivan, 138 F.Supp. 716 (S.D.N.Y. 1990) to reexamine the 48 month period of time preceding the June 8, 1990 onset date. (Tr. 66-68)  By Notice dated November 24, 1997, the claim was denied. (Tr. 65)  By Notice dated September 13, 1994, plaintiff's Request for Reconsideration was denied. (Tr. 119-121)  Plaintiff filed a request for a hearing before an ALJ on January 26, 1998. (Tr. 69)  A hearing was held on August 18, 1999, at which plaintiff testified and was represented by counsel. (Tr. 26-48)  A supplemental hearing was held on December 1, 1999 at which a vocational expert testified. (Tr. 49-64)  In his decision dated  February 23, 2000, the ALJ denied plaintiff's claim for SSI benefits prior to June 8, 1990. (Tr. 16-23).  Plaintiff requested a review which was denied on October 19, 1990.  (Tr. 10-12)  By Notice dated  May 13, 2000, the Appeals Council denied the request for review. (Tr. 6)  Plaintiff commenced this action on July 14, 2003.

Medical Background

In 1954, at the age of ten, plaintiff suffered a cerebrovascular episode (a stroke) which resulted in right sided spastic hemiparesis. (Tr. 103, 108-109)  Tritten had difficulty controlling her right foot, with the heel was off the ground most of the time. (Tr. 109)  Her right arm remained elevated with the right hand clenched. (Tr. 109)  Plaintiff retained enough strength in her right hand and arm to hold and lift items, but she had difficulty releasing items held in her right hand. (Tr. 109)

The medical records from the Neurology Clinic at Strong Memorial Hospital begin with a visit in March, 1984 which is described as a follow up with no change in symptoms or examination findings. (Tr. 126)  From 1984 through 1987, Tritten was treated with a variety of prescription medications including Valium and Diazepam to reduce anxiety and thus relax her muscles to reduce spasms in her right arm. (Tr. 112, 116-123)  The medications did reduce the involuntary movements but resulted in side effects in mood, digestion and exhaustion. (Tr. 112)

Dr. Berg's examination of plaintiff on August 25, 1987 at Strong Memorial Hospital showed that plaintiff tended to walk on her right toe but could walk on her heels. (Tr. 121)  Dr. Berg noted "normal" muscle bulk in the right arm with no contractions and no gross hyper-reflexic actions. (Tr. 116)  Occasional right leg contractions were observed and Dr. Berg speculated that plaintiff's

3

right upper extremity spasm might be voluntary or a conversion reaction. (Tr. 116)

Dr. A. Zeorlin, plaintiff's general care physician, examined plaintiff eight times between 1988 and 1989. (Tr. 130-132)  His medical notes revealed that plaintiff's examinations were generally normal with the exception of spasticity of the right side. Plaintiff ambulated fairly well with minimal spasticity in her legs. (Tr. 132) In January, 1989, Dr. Zoerlin noted that although plaintiff was able to walk, her gait was unsteady due to spasticity in her right leg. (Tr. 131)

B.   Non-Medical Background

Tritten is a 63 year old woman with an Associates Degree in Business Management from a junior college. (Tr. 30-31) She worked briefly in telephone sales in 1966 selling light bulbs manufactured by disabled persons. (Tr. 31, 79, 85-86)  She did not return to work because she was due to deliver her first child. (Tr. 86)  Although plaintiff applied for several jobs after her child was born, she was never hired. (Tr. 32, 86)  She testified that she passed a Civil Service test in the early 1980s. (Tr. 32)

During the relevant period, plaintiff was 45 years old and lived with her children. (Tr. 39)  She was able to cook and clean but her 15 year old daughter helped. (Tr. 39)  Tritten testified that she was able to lift ten pounds with her left arm and manipulate small objects with her left hand. (Tr. 40-41)  She had

no problem sitting and could walk the length of a mall. (Tr. 40-41) However, after walking that distance, she would experience right foot cramps.   Plaintiff did not drive because of spasticity and because the medications made her tired. (Tr. 33) She had taken Valium for 30 years but she testified that it made her tired and depressed. (Tr. 47)

_____At the supplemental hearing, a vocational expert, William G. Smith testified that a hypothetical individual of the same age and vocational background as plaintiff with similar limitations would be able to perform the work of a customer service representative and telemarketer. (Tr. 55) He did note that a person is presumed to be able to remain attentive at least 75% of an eight hour day. (Tr. 58-60)

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).  A disability is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

An individual's physical or mental impairment is not disabling under the Act unless it is:

of such severity that he is not only unable to do his previous
work but cannot, considering his age, education and work
experience, engage in any other kind of substantial gainful
work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B).  <u>Berry v. Schweiker</u>,

675 F.2d 464, 467 (2d Cir. 1982).

    In evaluating disability claims, the Commissioner is required

to use the five step process promulgated in 20 C.F.R. §§ 404.1520

and 416.920.  First, the Commissioner must determine whether the

claimant is engaged in any substantial gainful activity.  Second,

if the claimant is not so engaged, the Commissioner must determine

whether the claimant has a "severe impairment" which significantly

limits his ability to work.  Third, if the claimant does suffer such

an impairment, the Commissioner must determine whether it

corresponds with one of the conditions presumed to be a disability

by the Social Security Commission.  If it does, then no further

inquiry is made as to age, education or experience and the claimant

is presumed to be disabled.  If the impairment is not the equivalent

of a condition on the list, the fourth inquiry is whether the

claimant is nevertheless able to perform his past work.  If he is

not, the fifth and final inquiry is whether the claimant can perform

any other work.  <u>Bush v. Shalala</u>, 94 F.3d 40, 44-45 (2d Cir. 1996).

    This case comes to this Court on appeal as a result of the

Second Circuit holdings of <u>Stieberger v. Sullivan</u>, 138 F.Supp. 716

(S.D.N.Y. 1990) and <u>Dixon v. Shalala</u>, 54 F.3d 1019 (2d Cir. 1995).

In August, 1985, the United States District Court for the Southern

6

District of New York certified a statewide class of New York State residents which challenged the Commissioner's acquiescence policies with regard to published Circuit Court disability decisions.  On May 29, 1990, the district court granted partial summary judgment in favor of the plaintiffs, finding that the Social Security Administration ("SSA") had "nonacquiesced" with respect to several Second Circuit holdings.  Stieberger v. Sullivan, 138 F.Supp. 716 (S.D.N.Y. 1990).  The Court also denied the plaintiffs' summary judgment with respect to other issues.

Thereafter, on June 19, 1992, a settlement of the class action was reached which was modified on July 29, 1992. Stieberger v. Sullivan, 801 F.Supp. 1079 (S.D.N.Y. 1992).  Among other things, the settlement gave class members the right to have their cases reopened and readjudicated.  Pursuant to the Stieberger procedures, the SSA must develop the record for forty eight months prior to the date it received the request for reopening.  This time period is known as the "Development Period." Stieberger 801 F.Supp. At 1081, 1091.  The Development Period also includes the time period subsequent to the request for reopening.  The Development Period defines the period the SSA will review to determine whether the class member is entitled to cash relief under the settlement.

In Dixon v. Sullivan, 792 F.Supp. 942 (S.D.N.Y. 1992), the District Court concluded that SSA had systematically misapplied non-severity analysis at step two of the sequential analysis and ordered

that claims denied at step two between June 1, 1976 and July 19, 1983 be readjudicated.  This decision was affirmed by the Second Circuit which directed the SSA to "make reasonable efforts to retrieve available, relevant, administrative records for purposes of readjudicating the claims of class members." Dixon v. Shalala, 54 F.3d 1019, 1034 (2d Cir. 1995).  Dixon required that consideration of the evidence date back to the earliest onset date alleged in a reopened disability insurance benefits application.

In his decision dated February 23, 2000, the ALJ determined the Development Period under Stieberger to be June 1, 1986 until May 30, 1990, the date plaintiff's current entitlement to SSI began. (Tr. 19)

The ALJ than followed the five step analysis to determine if at any time during the relevant period Tritten was entitled to a period of disability.  The ALJ found that plaintiff (1) had not engaged in substantial gainful activity during the relevant time period; (2) that plaintiff was status post cerebrovascular accident with residual right sided spastic hemiparesis; (3) did not have an impairment listed in Appendix 1, subpart P, Regulation No. 4; (4) had the residual functional capacity to lift or carry up to ten pounds occasionally, stand or walk for about two hours in an eight hour day, and sit for six hours in an eight hour day and had no use of her right arm; (5) did have the residual functional capacity to perform sedentary work.  (Tr. 21-22)

Plaintiff's argument focuses on the ALJ determination with regard to step three of the analysis. Specifically, Tritten argues that she should have been found to have a listed impairment under Listing 11.04B. Listing 11.04B requires a finding of disability based on medical factors when an individual meets the following criteria:

> Central nervous system vascular accident. With one of the following more than three months post-vascular accident: . . . . B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. (See 11.00C).

Section 11.00C provides:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms."

Plaintiff argues that she did have disturbance of gait and station as required by Listing 11.04B. She contends that the regulation does not require severe limitation in ambulation nor incapacity. Rather, the inability to stand or walk for prolonged times under Listing 11.04B is satisfied where there is uncoordinated gait or poor balance that results in an unreasonably slow gait.

The medical records clearly establish that plaintiff experienced significant and persistent disorganization of motor

function in two extremities, her right arm and leg.  Indeed, the ALJ found that plaintiff had "no use of her right arm." (Tr. 22) Although Dr. Zoerlin described plaintiff as being able to ambulate "fairly well", he clarified that he meant that she was able to walk but her gait was "unsteady."  (Tr. 131)  Further, plaintiff was limited to standing and walking no more than two hours per day in an eight hour day .

I find that plaintiff meets the requirements of part B of Listing 11.04 based on the limitations of her right arm and leg. Although plaintiff was able to compensate for her limitations by learning to write with her left hand and walking a reasonable distance, the record establishes that she still has very limited functioning in her hand, dropping things frequently, and has a limp in her gait even with medication and easily loses her balance. Further, she walks slower and has foot cramps after walking.  The degree of impairment of plaintiff's motor function during the development period is sufficient to satisfy the requirements of Listing 11.04.

<u>CONCLUSION</u>

I find the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act is not supported by substantial evidence in the record.  Accordingly, the decision of the Commissioner denying plaintiff's disability claim is reversed, the plaintiff's motion for judgment on the pleadings is granted and

defendant's motion for summary judgment is denied.   The case is remanded to Commissioner for the sole purpose of calculation and payment of benefits.

ALL OF THE ABOVE IS SO ORDERED.


S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           April 5, 2007

11